UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :           **Memorandum and Order**
                                                :
CONEY ISLAND AMUSEMENT, INC.,                   :           05 Civ. 08238 (LBS)
                                                :
                          Debtor.               :
                                                :
------------------------------------------------------------x

SAND, J.

      In the bankruptcy proceedings in this case, debtor Coney Island Amusement, Inc. ("Debtor") objected to, <u>inter alia</u>, the use of the 18% interest rate prescribed by New York City Administrative Code § 11-224(g)[1] as the post-petition interest rate to be collected by the City of New York ("City") pursuant to 11 U.S.C. § 506(b)[2] on Debtor's overdue real property taxes. While conceding that nonconsensual, statutory, oversecured creditors, such as the City, can collect post-petition interest under § 506(b), <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235 (1989), Debtor argued that the 18% rate—14% above the prime rate for 2004-2005—was so high as to be a <u>de facto</u> penalty, impermissible under § 506(b). <u>See</u> Objection to the Real Property Tax Claims of the City of New York, Fourth Ground of Objection, Feb. 16, 2005, Bankruptcy Court

---

[1] Section 11-224(g) provides:
    No later than the twenty-fifth day of May of each year, the banking commission shall transmit a written recommendation to the council of a proposed interest rate to be charged for nonpayment of taxes on real estate . . . In making such recommendations the commission shall consider the prevailing interest rates charged for commercial loans extended to prime borrowers by commercial banks operating in the city and shall propose a rate of at least six per centum per annum greater than such rates. The council may be resolution adopt an interest rate to be applicable to the aforementioned parcels and may specify in such resolution the date on which such interest rate is to take effect.
N.Y.C. Ad. Code § 11-224(g) (2005).

[2] Section 506(b) reads:
    To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.
11 U.S.C. § 506(b) (2005).

Docket No. 34. Relying on three cases decided by the Bankruptcy Court for the Eastern District of New York, In re P.G. Realty Co., 220 B.R. 773 (Bankr. E.D.N.Y. 1998), In re Marfin Ready Mix, 220 B.R. 148 (Bankr. E.D.N.Y. 1998), and In re Navis Realty, Inc., 193 B.R. 998 (Bankr. E.D.N.Y. 1996), the bankruptcy court rejected Debtor's characterization of the interest rate as a penalty and found it appropriate in the circumstances of this case. Debtor appeals that decision here.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) and reviews the bankruptcy court's determinations of law de novo and its findings of fact under a clearly erroneous standard. See, e.g., In re Argentinian Recovery Co. v. Bd. of Dirs. of Multicanal S.A., 331 B.R. 537, 543 (S.D.N.Y. 2005).

This Court agrees with those courts that have concluded that when determining the rate of post-petition interest due oversecured tax lien claimants, "a bankruptcy court is not necessarily bound by the state statutory rate, but should be reluctant to deviate from that rate except in very limited circumstances." In re P.G. Realty Co., 220 B.R. at 778. While a number of courts have cited a de facto penalty disguised by the label "interest" as a circumstance justifying deviation, see, e.g., In re Navis Realty, Inc., 193 B.R. at 1017 (citing Galveston Indep. Sch. Dist. v. Heartland Fed. Sav. and Loan Ass'n, 159 B.R. 198, 204 (S.D. Tex. 1993) (holding that "nonconsensual oversecured creditors also receive the rate of interest dictated by the statutes under which their liens arise, provided the charge can be reasonably characterized as true interest rather than as a penalty")), no courts to have thus far considered the issue have found the Administrative Code's prescribed 18% rate to be a disguised penalty, and in fact, the Eastern District Bankruptcy Court considered this issue and offered persuasive reasons why this rate was not a penalty. See In re P.G. Realty Co., 220 B.R. at 780-83.

Contrary to Debtor's assertion, the cases relied on by the bankruptcy court did not place exclusive reliance on the rate's designation as interest. Instead the decisions relied on more substantive indicators, for example the fact that the Administrative Code contained a separate

provision explicitly providing for a *penalty* for nonpayment of taxes, thus supporting the argument that the legislature did not intend the interest rate to serve as a punitive measure. See In re Marfin Ready Mix, 220 B.R. at 151-52. Furthermore, these decisions noted that the particular circumstances of the City as a creditor lends further justification to the high rate:

> Although an 18% rate is more typical of the rates charged by *unsecured* creditors, as opposed to secured creditors, the Court takes judicial notice of the fact that since the City is unable to bargain for lender protections such as title and hazard insurance, the City may in fact be an unsecured creditor in some cases. The taxpayer may be uninsured and the property may burn to the ground, leaving the City with no security for repayment. In addition, some differential between tax rates and commercial rates is required, to encourage prompt tax payments.

In re P.G. Realty, 220 B.R. at 782 (citation omitted). This Court finds these arguments persuasive and rejects Debtor's contention that the 18% rate is a de facto penalty.

Debtor also argues that this Court should reduce the interest rate in this case because of equitable principles underlying the bankruptcy code. However, neither of the equitable principles used by other courts to justify lowering the interest rate—namely whether the imposition of the statutory rate would cause unsecured creditors to suffer direct harm or would impede the Debtor's "fresh start"—offer a compelling justification for a rate reduction here. After all outstanding property tax liens, including interest at the 18% rate, were paid, there was still enough money left from the sale of the property on which the taxes were due to satisfy all remaining claims and to provide Debtor with a $2,000,000 surplus. In this way, no unsecured creditors were harmed and debtor was left with adequate means for a "fresh start."[3]

---

[3] While Debtor also presents as an equitable consideration his contention that "the real property taxes here at issue were incurred by the Debtor in reliance upon the City honoring the terms of its agreements with the Debtor, upon which the City subsequently reneged," (Br. of Debtor-Appellant 18) it has already been determined by Judge Glasser that the City breached no obligations to Debtor. See Coney Island Resorts, Inc. v. Giuliani, 103 F. Supp. 2d 645, 655 (E.D.N.Y. 2000). Due to the doctrine of issue preclusion, this Court will not reconsider that argument now.

3

Having determined that the 18% rate is not a de facto penalty and that there are no equitable considerations compelling a rate reduction, this Court affirms the Order of the bankruptcy court.

SO ORDERED.

Dated: New York, NY
March 13 2006

_____
Leonard B. Sand
U.S.D.J.

4